ABBEN, J.,
delivered the opinion of the Court.
The Court is of opinion, that the amount and validity of the claim of Gill Arm-stead’s legatees against *the estate of William Armstead deceased, were ascertained and adjudged by the decree of the Chancery court of the 1st of June 1816. That although the said decree was reversed by the decree of this Court, pronounced on the 11th of December 1821, for formal errors, yet the mode of settling the accounts between said William Armstead and the estate of Gill Armstead was directly passed upon by the Court of appeals, and so much of the decree of the 1st June 1816, as ascertained the amount of the debt and adjudged it to be due by William Armstead’s estate, was substantially afíirmed, and the Court of chancery was instructed to enter a decree according to the principles so settled by the decree of the Court of appeals; in pursuance whereof the said Chancery court did, on the 18th July 1822, enter up a decree for the amount of the debt so ascertained to be due from William Armstead’s estate to the legatees of Gill Armstead.
The Court is further of opinion, that said decrees did in effect adjudge and establish that as William Dandridge, who intermarried with the only daughter of William Armstead, being best acquainted with, and having laboriously attended to the taking of the accounts, being de facto administrator of William Armstead, had possessed himself of the assets and credits of the estate, the payment of the debt so ascertained and established against William Armstead’s estate must ultimately fall on said Dandridge. The Court is therefore of opinion, that said decrees taken in connection with the decree of the Court of appeals of the 16th February 1836, reversing a decree of the Chancery court pronounced on the 3d of August 1829, dismissing the bill as to the representatives of Bartholomew Dandridge and William Bangborne, conclusively establish against said William Dandridge and all his representatives the indebtedness of William Armstead’s estate to the legatees of Gill Armstead; that they had a right to follow *the assets in William Dandridge’s hands; that a sufficiency of such assets had come to his hands, and that his representatives, who have received his assets, are accountable to said legatees for the assets so received.
And the Court, without deciding what would be the effect in all cases of a judgment against an administrator de bonis non in establishing a debt against the estate so as to conclude a former executor or administrator, and thereby subject him to a devastavit, is of opinion, that under the circumstances disclosed in this case, the decree pronounced against Bartholomew Dandridge, administrator de bonis non of William Dandridge deceased, on the 18th of July 1822, in pursuance of the decree of the Court of appeals of the 11th December 1821, substantially affirming the decree of the 1st June 1816, should be treated and held as conclusive upon the said William Bang-borne, the prior executor of said Wrilliam Dandridge deceased, upon the question of the indebtedness of William Armstead’s estate, the right to follow his assets in the hands of William Dandridge, the receipt of sufficient assets by William Dandridge for the payment thereof, and the liability of *112 his estate for the amount: It sufficiently appearing that said claim was controverted by said William Dandridge in his lifetime, who, according to the decree of the Court of appeals, was best acquainted with and laboriously attended to the taking of the accounts; and it furthermore appearing that after the death of said William Dandridge, the suit was regularly revived against Susanna Dorrington and David Dorrington her husband, the said Susanna having qualified as executrix of William Dandridge, and against John Bassett and William Bangborne who were named as executors; that the said Dorrington and wife filed their answer making full defence, and that after the order of the County court of June 3d, 1805, treated by the Court of appeals by the decree of the 16th February 1836, as a revocation of her authority *as executrix, the said William Bangborne qualified as executor, and thereafter filed his answer controverting the "justness of the claim; that exceptions were taken to the report of the commissioners, and the case matured for a decision on the merits during his lifetime. Under such a state of facts where the claim was controverted by the party sought to be charged in his lifetime, the suit revived against his executor who made a vigorous and full defence, and the case was ready for a decision on the merits when he died, and the cause was revived against the administrator de bonis non, against whom the decree was pronounced, there can be no hazard of injustice to the executor in treating the decree against the administrator de bonis non, as conclusively establishing the debt against the estate, botja as regards the administrator de bonis non and the previous executor; and Bangborne is properly responsible for the assets he paid over to the legatees of William Dandridge to the prejudice of Gill Armstead’s legatees who were creditors of the estate as ascertained and adjudged by the decrees hereinbefore referred to.
The Court is further of opinion, that as it appears said William Bangborne, executor of William Dandridge, paid over to his legatees the assets, with full notice of said claim, and after the suit to assert and establish the same against the estate of his testator, had been duly revived against him; and as the decree establishing said claim is, under the circumstances aforesaid, conclusive as it respects him, in establishing the validity of the debt against his testator’s estate, such payment constituted a devastavit, and the liability arising from such devastavit resting on him at his death, in equity and by virtue of the official bond, created a debt which his representative was bound to discharge before making distribution of his estate; to be credited, however, by the amount of assets he retained in his hands, and which were afterwards paid over in invitum, by the *decree of the Chancery court to Bartholomew Dandridge, the administrator de bonis non.
The Court is further of opinion, that as the legatees of said Gill Armstead claimed by force of the same decrees ascertaining the rights of all, and having a common interest, are seeking satisfaction out of a common fund, it was proper to unite in one suit to get the benefit of the former decrees in their favour; and the bill filed is not liable to the objection of being multifarious.
The Court is further of opinion, that there is nothing to distinguish the case of E. A. A. Booth from that of the other claimants. She was a party in whose favour the decree of 1st of June 1816, was pronounced, which as to her right to recover, was substantially affirmed by the decree of the Court of appeals of the 11th of December 1821. And though by the decree of the 18th of July 1822, there was an omission to enter a decree in her favour in consequence of the suggestion of her intermarriage with-Booth, yet, by the principles of that decree, purporting to be entered in conformity with the decree of the Court of appeals, her right to recover, which was a joint and common one with the other legatees, was in effect established; and the decree for her proportion was merely suspended to bring in a formal party in whose name the same could be entered; and the suit never having abated as to her, and she having survived her husband, she stands in the same position with the other claimants, with a decree establishing their rights jointly, and entitled equally with them to carry it into effect.
And the Court is further of opinion, that as the decree of the 1st June 1816, was suspended by the appeal, and no definitive decree establishing the debt was rendered until the decree of the Chancery court of the 18th July 1822, was entered in conformity with the instructions contained in the decree of the Court of appeals of the 11th December 1821; and as the claimants *had no right to proceed against the representatives of William Bangborne for his devastavit until their debt was established against the estate of said William Dandridge, their bill filed in February 1826, against the representative of said Bang-borne and the representatives and legatees of said William Dandridge, to get the benefit of said decrees, and charge the estate of said Bangborne for his devastavit, was not barred by any statute limiting actions against fiduciaries; nor was there any such delay as to require a Court of equity to refuse relief upon the ground of laches.
The Court is further of opinion, that as it appears that Burwell Bassett, the representative of William Bangborne the elder and of William Bangborne, jr., had passed over the assets of said estates before he had notice of the claim now in controversy, as he alleges in his answer, to the proper distributees and legatees of said Bangbornes, it was proper to throw the burthen on the distributees and legatees instead of the per *113 sonal representative; they having the fund out of which the claim should he satisfied, and which in any event, must be held as being ultimately subject to the claim sought to be enforced, unless the same can be otherwise satisfied.
The Court is further of opinion, that as it respects the security of Bartholomew Dandridge, administrator de bonis non, the cause of action arose against him from the rendition of the decree of the 18th July 1822; as it would have been competent for the claimants, upon the return of nulla bona on said decree, to have proceeded against said administrator de bonis non and his securities in his official bond for his devastavit; and no proceeding having been commenced against such securities until they were made defendants by the amended bill filed on the 14th May 1838, the act of March 8th, 1826, relied on by the security Thomas H. *Terrill in his answer, barred a recovery against the securities.
The Court is further of opinion, that the statement XX referred to in the decree now appealed from, correctly ascertained the sums for which the representatives of B. Dandridge’s estate, and the representatives of Bangborne’s estate were respectively responsible; that all exceptions inconsistent with said special' statement XX were properly overruled, and all exceptions consistent therewith properly sustained; and said statement so confirmed and constituting a part of said decree, definitively ascertains the amount for which Bartholomew Dandridge’s estate is liable, and for which a decree was properly rendered in favour of the claimants respectively, against Philemon Jones, committee and administrator of his estate; and the same also definitively ascertains the amount for which the estate of William Bangborne is ultimately responsible and may be compelled to pay eventually unless otherwise discharged.
The Court is further of opinion, that as Mrs. B. Bassett was, under the will of William Bangborne, jr., a legatee for life, and it appears that before any recovery she had departed this life, and the part held by her for life was passed over to those entitled in remainder, the surviving husband having no assets of his wife, could not be held responsible on account of such life estate which had previously terminated; and the assets of William Bangborne which the claimants were entitled to follow had passed into the hands of those entitled thereto in remainder; and the decree subjecting said B. Bassett, on account of said life estate, to a portion of the amount for which the estate of Bangborne was responsible was erroneous.
And the Court is further of opinion, that although as a general rule a creditor of an estate is not bound to look beyond the personal representative, who is immediately '^responsible to him, yet under peculiar circumstances it is proper that a Court of equity should throw the burthen upon those ultimately liable, and that more especially when by the acts and conduct of the creditor the party who might in strictness have been primarily liable, may have been misled and induced to believe he was not looked to as responsible. In this case it is manifest that the representatives of Bangborne have received no part of William Dandridge’s estate, the assets of which should properly have been applied to the payment of this claim. The same have all been duly accounted for and passed over by Bangborne and his representative to the legatees and administrator de bonis non of William Dandridge. On the death of Bangborne the claimants revived their suit against the administrator de bonis non of William Dandridge, and dropped the representatives of Bangborne from the cause; thus indicating an intention to look to and pursue the estate of William Dandridge. In the meantime the representative of Bangborne turned over to the administrator de bonis non of William Dandridge, in obedience to a decree of Court, the assets of William Dandridge remaining in the hands of Bangborne at his death; and thereafter without any notice, as he alleges in his answer, of the claim now sought to be enforced, he proceeded to distribute the estate of Bangborne in the mode disclosed by the record. The claimants, by their bill of 1826, still looking to the estate of Dandridg'e for satisfaction, made the legatees and representative of that estate parties; and the Court having them before it, was bound in the exercise of a sound discretion under the circumstances aforesaid, to have required the claimants to proceed in the first place against the legatees of William Dandridge, holding Bangborne’s estate ultimately responsible for the sum so as aforesaid ascertained to be a proper charge against it, or for so much thereof *as could not be made by proceeding against the legatees of William Dandridge; and it was error to dismiss the bill as against the representatives and legatees of William Dandridge, or any of them, and to decree against the representatives of Bangborne until such effort had been made to procure satisfaction out of the assets of William Dandridge’s estate in the hands of his representatives.
It is therefore ordered and decreed, that said decree in the particulars in which it is herein declared to be erroneous, be reversed with costs; and that the same, so far as it conforms to the principles above declared, and is not herein declared to be erroneous, be and the same is hereby affirmed. And the cause is remanded with instructions to require the plaintiffs in the Court below to revive, if necessary, against the legatees, and also the devisees, if so advised, of William Dandridge, and for all proper accounts, in order to a final decree according to the principles above declared, which is ordered to be certified.
*114 MULTIFARIOUSNESS (IN EQUITY).
I. Nature.
1. Difficult to Define.
2. What Constitutes.
3. Tests.
a. In General.
b. Oases Illustrating the Application of the Car-
dinal Rules or Tests.
(1) Bills Objected to, but Held Not to Be Multifarious.
(2) Bills Held to Be Multifarious.
II. Forms of Multifariousness.
1. In General.
2. As to Matter.
3. As to Parties.'
III. Terminology.
IV. Reason for Rule.
V. Applies to Wbat Pleadings.
VI. Multifariousness as Determined by Prayer for Relief.
1. In General.
2. Alternative Prayer.
3. Impossible or Improper Relief Asked.
VII. At What Stage Objection Raised. vttt. Method of Raising Objection.
IX. By Whom Raised.
X. Waiver.
XI. Effect and Remedy.
1. In General.
2. Amendment.
3. Dismissal.
^ Cross References to Monographic Notes.
Amended Bills, appended to Belton v. Apperson, 26 Gratt. 207.
Answers in Equity Pleading, appended to Tate v. Vance, 27 Gratt. 571.
Creditors’ Bills, appended to Suckley v. Rotchford, 12 Gratt. 60.
Indictments, Informations and Presentments, appended to Boyle v. Com., 14 Gratt. 674.
I. NATURE.
1. DIFFICULT TO DEFINE.—Some difficulty is experienced in accurately defining the term “multifariousness.” As used in chancery pleadings, it more properly consists of a demand in one bill of several matters of a distinct and independent nature against several defendants; or the uniting in one bill against a single defendant several matters perfectly distinct and unconnected. See Dan. Ch. Pr., 2093.
But it is impossible to lay down any fixed and invariable rule applicable to all cases as to what constitutes multifariousness. As said by Staples,
J. , in Segar v. Parrish, 20 Gratt. 679, “The courts have found it impracticable to lay down any fixed rule in regard to the incorporation of separate and distinct matters in the same bill. They seek rather to ascertain what is just and convenient in the particular case, than to declare any general rule, applicable to all cases.” Almond v. Wilson, 75 Va. 613; Dillard v. Dillard, 97 Va. 434, 34 S. E. Rep. 60.
2. WHAT CONSTITUTES.—In general, it is either a misjoinder in a bill of claims of such different characters that the court will not permit them to be litigated in one record; or it is where a party is brought as a defendant upon a record, with a large portion of which and .of the case made by which he has no connection whatever. Or as stated
in Sadler v. Whitehurst, 83 Va. 46,1 S. E. Rep. 410, where a bill joins distinct and independent matters, thereby confounding them, as, for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants in the same bill. Dunn v. Dunn, 26 Gratt. 291.
But where there is a common liability in the defendants and a common interest in the plaintiffs, different claims may be united in one and the same suit, although the interest be not a coextensive interest. Brown v. Buckner, 86 Va. 612,10 S. E. Rep. 882. See, in this connection, Buffalo v. Town of Pocahontas, 85 Va. 225, 7S. E. Rep. 238; Batchelder v. White, 80 Va. 103; Stuartv. Coalter, 4 Rand. 74; Spooner v. Hilbish, 92 Va. 333, 23 S. E. Rep. 751; Triplett v. Woodward, 98 Va. 187, 35 S. E. Rep. 455; Snyder v. Grandstaff, 96 Va. 473, 31 S. E. Rep. 647.
However, a bill presenting different views of the same collection of facts, stated in the alternative, is not multifarious because thereof. Snyder v. Grand-staff, 96 Va. 473, 31 S. E. Rep. 647.
3. TESTS.
a. In General.
In Alexander v. Alexander, 85 Va. 353, 7 S. E. Rep. 335, the court says: “It will seldom, if ever, be found difficult to determine whether multifariousness exists in the particular case, if we will only bear in mind these cardinal rules upon the subj ect, namely, that a bill will always be deemed multifarious, where several matters joined in the bill against one defendant are so entirely distinct and independent of each other that the defendant will be compelled to unite, in his answer and defence, different matters wholly unconnected with each other, and as a consequence the proofs applicable to each would be apt to be confounded with each other, and great delays might be occasioned respecting matters ripe for hearing by waiting for proofs as to some other matter not ready for hearing; or again, where there is a demand of several matters of a distinct and independent nature, iu the same bill, rendering the proceeding oppressive because it would tend to load each defendant with an unnecessary burden of costs by swelling the pleadings with the statement of the several claims of the other defendants, with which he has no connection. Story’s Eq. PI. sec. 271; Segar v. Parrish, 20 Gratt. 679. And that a bill will not usually be regarded as multifarious, where the matters joined'in the bill, though distinct, are not absolutely independent of each other, and it will be inore convenient to dispose of them in one suit (see Nulton v. Isaacs, 30 Gratt. 738; Hill v. Hill, 79 Va. 592), or where the several defendants have one common interest centering in the point in issue.”
In Crickard v. Crouch, 41 W. Va. 503, 23 S. E. Rep. 727, it is held that a bill in equity which includes many defendants who have distinct interests is multifarious, and therefore erroneous. Stuart v. Coalter, 4 Rand. 74.
So two distinct grounds of equitable relief, even between the same parties, are not to be joined in one bill. Zell Guano Co. v. Heatherly, 38 W. Va. 409,18 S. E. Rep. 611.
And it is well settled, that a bill is demurrable in which are united several distinct rights, each sufficient, as stated, to sustain a bill against one defendant, or in which there is a demand of several matters, distinct in their nature, against several defendants, who are unconnected in interest and *115 liability. Washington, City Say. Bank v. Thornton, 83 Va. 157, 2 S. E. Rep. 193; Oney v. Ferguson, 41 W. Va. 568, 23 S. E. Rep. 710. See also, in this connection, Almond v. Wilson, 75 Va. 613; Petty v. Fogle, 16 W. Va. 497; Coleman v. Claytor, 93 Va. 20, 24 S. E. Rep. 463; Baskin Wood, etc., Co. v. Cleveland, etc., Co., 94 Va. 439, 26 S. E. Rep. 878; Huff v. Thrash, 75 Va. 546; Buffalo v. Town of Pocahontas, 85 Va. 222, 7 S. E. Rep. 238. See Moore v. McNutt, 41 W. Va. 695,24 S. E. Rep. 682; Jordan v. Liggan. 95 Va. 616, 29 S. E. Rep. 330; Nunnally v. Strauss. 94Va. 255, 26S. E. Rep. 580; Shen. Val. Bk. v. Bates, 20 W. Va. 210; Crumlish v. Ry. Co., 28 W. Va. 623; Bosher v. R. & H. Land Co., 89 Va. 455, 16 S. E. Rep. 360; Jones v. Clark, 25 Gratt. 642; Miller v. Miller, 92 Va. 196, 23 S. E. Rep. 232.
However, a bill will not be held multifarions by reason oí an improper charge, which charge itself does not set up an Independent cause of action. Pyles v. Riverside Furn. Co., 30 W. Va. 123, 2 S. E. Rep. 909.
b. Cases Illustrating tub Application of the Cardinal Rules or Tests.
(1) IHUs Objected to, but Held Not to Be Multifarious.
Amended Bills.
Wien Sustained— Where it is apparent from the whole scope of an amended bill that It was intended to accomplish the same object for which the original bill was filed, the bill, as amended, will not be deemed multifarious although there may be particular charges in the amended bill apparently intended to base relief on a different ground from that stated in the original bill. Hutchinson v. Maxwell, 7 Va. Law Reg. 786.
But where a bill has been filed to foreclose a mortgage executed by husband and wife, but which only conveyed personal property of the husband and his interest in a certain tract of land, the court ought not to permit an amendment of the bill seeking to charge the debts secured by such mortgage, on certain other real estate belonging to the wife as her sole and separate property, as such amendment would make the bill multifarious. Linn v. Patton, 10 W. Va. 187.
General Creditors’ Bill.
Relief in Several Ways Sought.—A bill in a general creditors’ suit is not multifarious where it seeks to enforce a mechanics’ lien in favor of complainant, to set aside a deed of trust executed by defendant, to have another deed of trust declared to inure to the benefit of all creditors, and to convene defendant’s creditors and wind up its affairs. Haskin Wood, etc., Co. v. Cleveland, etc., Co., 94 Va. 439, 26 S. E. Rep. 878. See Hutchison v. Mershon, 89 Va. 624, 16 S. E. Rep. 874.
Bill by Single Creditor.
Settlement of Decedent's lístate and Accounts of Administrator—A bill by a creditor of a decedent to settle the estate and accounts of the administrator is not multifarious. Turk v. Hevener (W. Va. 1901), 38 S. E. Rep. 476.
Dower.
Recovery of—Several Purchasers from Husband— Dower Not Relinguished.—A bill against several purchasers of separate and distinct tracts of land aliened by a husband during coverture, without the relinquishment of the wife, to recover dower in each tract, is not multifarions. The plaintiff may elect to proceed against each separately, or all together. Boyden y. Lancaster, 2 P. & H. 198.
Subjection or Partition of Land.
Ashing Property to Be Subjected to Lien, Also That a Confessed Judgment Be Declared Void.—A bill in a suit
in equity brought for the purpose of subjecting property to the lien of an attachment and also to have a confessed judgment lien on the attached property declared fraudulent as to the plaintiff’s lien, is not multifarious. Stewart v. Stewart, 27 W. Va. 167.
Praying for a Decree to Enforce, a Vendor's Lien and Settle Transactions cmd Accounts.—A bill by a vendor to enforce his vendor’s lien sets out an agreement between the plaintiff and the purchasers, by which it was agreed the land should be the joint property of the plaintiff and the purchasers, that it should be laid off into town lots, the lots sold, and the net proceeds applied to the payment of the plaintiff's lien, and the residue if any. of the lien paid by the purchasers ; that lots had been sold by the parties as a company or partnership partly for cash and partly on credit ; that all the purchase money had become due and a large portion of it remained unpaid, and prayed that the transactions of the company and the accounts of the sales of lots might be settled, and for a decree against the purchasers for the balance of the purchase money ; such a bill is not multifarious, nor is it demurrable for the reason that the purchasers of the lots so sold are not parties to it. Carskadon v. Minke, 26 W. Va. 729.
Partition of Coast Land to Protect Fishing Interests.— Where a conveyance by the board of public works to H. and F. bordered on the sea and on the bay, and included not only the land of the plaintiff, but was of a much larger tract, called the Desert, and the plaintiff asked in his bill that the court would declare such partition of said tract of land (if such partition should be necessary) as might be right and proper to protect the use and privileges of the shores and bays mentioned in the bill, to which said tract adjoined, for fishing thereon, as authorized by law, it was held that the bill was not demurrable for multifariousness. Garrison v. Hall, 75 Va. 150.
Specific Performance and Injunction.
Sought against Different Defendants. —A bill that asks a specific performance against one defendant, and to enjoin a suit for unlawful detainer, brought by -other defendants, claiming under title from the same party against whom specific perform anee is sought, is not multifarious. Shafer v. O’Brien, 31 W. Va. 601, 8 S. E. Rep. 298.
Wills.
Bill to Obtain Construction of Will, and Recovery of Property—A bill brought to obtain a construction of a will and the recovery of property held by several persons by titles derived under the same will, is not multifarious. Withers v. Sims, 80 Va. 651.
Bill by Legatees—Settlement of Executor's Accounts and Distribution.—A bill brought by residuary legatees is not multifarious which seeks the settlement by an executor of a father of his estate and also of the mother’s estate, whereby the agreement of the parties interested the executor of_the father had agreed likewise to act as executor de son tort of the mother and distribute the estate of the mother after the payment of her debts in the same manner and to the same parties, to whom the father’s estate was to be distributed, the two estates being so mingled, as to make their separation difficult. Anderson v. Piercy, 20 W. Va. 282. See Sheldon v. Armstead, 7 Gratt. 264.
(2) Bills Held, to Be Multifarious.
Distinct and Inconsistent Causes.
Two Distinct Causes of Action on Two Different Policies of Insurance.—A bill which sets forth two distinct *116 •and inconsistent causes of action, upon two different policies of insurance, one actually issued, upon which premiums were not paid, the nonpayment being excused by the alleged insolvency of the company: the other, which ought to have been issued, because the first had been surrendered and receipted in full to the company, is bad on demurrer because multifarious. Universal Life Ins. Co. v. Devore, 83 Va. 267, 2 S. B. Rep. 433.
Bill to Enforce Judgment against Administrator, to Sell Band, Establish a Devastavit, Convene Ileirs and Creditors, and Give Various Other Specified Belief.—A bill which seeks to enforce payment of a small judgment for costs against an administrator d. b. n. out of funds in his hands; to sell the real estate of the decedent to pay such judgment; to establish a devastavit against the administrator, and surcharge and falsify his accounts; to convene the heirs and creditors of said administrator, now deceased; to settle the accounts of his administrator, and sell his real estate; to convene the heirs, settle the accounts of the administrator, and distribute the estate of the third decedent; to convene the devisees, settle the accounts of the executor, and distribute the estate of a fourth decedent,—is multifarious and inequitable. Crickard v. Crouch, 41W. Va. 503, 23 S. E. Rep. 727.
Bill to Establish a Trust, Becover Bents, Profits, and Purchase Honey, and Assess Dower—A bill to establish a trust in certain lands, and to recover rents and profits, and to assess dower, and to recover purchase money alleged to be due, is held in Bailey v. Calfee (W. Va. 1901), 39 S. B. Rep. 642, to be multifarious.
Aslcing Specific Performance, Damages for False Bepresentaiions, for Beceiver, and Other Specified Belief— A bill is filed (1) against one defendant, for specific performance of a contract; (2) in default of this, to obtain a decree against other defendants, for damages for breach of warranty; (3) against some of the defendants last referred to, for damages for false representations in regard to the title; (4) against one of the defendants last referred to, for breach of his promises to save plaintiff harmless in case the defendant referred to in first clause refused specific performance; (5) for a receiver; (6) for a decree against one of the defendants for payment of his subscription to the stock of the defendant company; (7) to have the assets of the company administered for the benefit of its creditors. To say nothing of the demand for damages and for administration of the assets, as not constituting good grounds for a suit in equity, there remained several other demands against several other defendants which cannot be properly joined in the same suit. The bill is multifarious, and was rightly dismissed on demurrer. Wells v. Sewell’s Point Guano Co., 89 Va. 708.17 S. E. Rep. 2.
Bill against Grantee of One Heir, and Other Heirs, to Set Aside Deed, and Establish Besulting Trust as an Alternative.—And a chancery suit, brought by one heir of a decedent against the person to whom heirs of the decedent had voluntarily conveyed all his rea 1 estate, and the other heirs of the decedent, to set aside the deed as fraudulent and void because procured by undue influence, and because the grantor was non compos mentis, and, if this should not bé proven, then to set up a resulting trust to a portion of this real estate, because the plaintiff had paid a certain amount of the purchase money when the land was conveyed to the decedent, is multifarious. Shaffer v. Fetty, 30 W. Va. 248,4 S. B. Rep, 278.
Bill by Heirs—Settlement of Decedent’s Partnership Affairs, Appointment of Beceiver, Accounts, etc.—In Porter v. Robinson (Va.), 22 S. E. Rep. 843, a bill by heirs alleged their heirship; partnership of their decedent in a firm; sale of all the assets of the firm to a corporation in consideration that the vendee paid all the debts of the firm; completion of the sale by themselves, as heirs, and the surviving partners; sale by the vendee of the same property to a second corporation, in which the purchase price was partly secured by bonds, for the payment of which a vendor's lien was reserved, and subsequently cancelled by the president of the first corporation without authority; execution of a trust deed of all the property by the last vendee to secure a fraudulent issue of bonds; the assumption and nonpayment of the debts of the partnership by the first vendee; stock taken by plaintiffs in the second corporation on representations of the president of the first corporation, also a promoter of the second corporation that the lands would be sold to the latter company for $300,000, whereas they were sold at $330,000. The bill asked for the appointment of a receiver, and settlement of the accounts of the partnership; cancellation of the stock taken in the second corporation; a decree against it and its promoters for the full valueof the stock, and'against the president of the first corporation for the $30,000 profits made by him for the sale of the land; for the restoration of the vendor’s lien, and the cancellation of the trust deed. It was held, that the bill was multifarious.
Parties Not Connected in Interest.
Charges against Officers of Company, Individual Officers, Groups of Officers, and President and Directors.—A bill which charges various acts of maladministration against the officers of a company, some of which are attributable to individual officers, some to different groups of officers, and some to the president and directors as a whole, would seem to present a combination of causes of action so hopelessly diverse as to be incapable of adjustment in one suit. Brown v. Bedford City L. & I. Co., 91 Va. 31, 20 S. E. Rep. 968.
II. FORMS OF MULTIFARIOUSNESS.
1. IN GENERAL.—Multifariousness may appear in two general forms. It may be a j oinder of claims of such different characters, that the court will not permit them to be litigated in one record; or it may be where a party is brought as a defendant upon a record, with a large portion of which and of the case made by which he has no connection whatever. Brown v. Buckner, 86 Va. 612, 10 S. B. Rep. 882,; Washington City Sav. Bank v. Thornton, 83 Va. 157, 2 S. E. Rep. 193: Oney v. Ferguson, 41 W. Va. 568, 23 S. E. Rep. 710.
2. AS TO MATTER.—Thus, where debts are assigned to a party who sues for an accounting between the assignor and his several debtors, plea by and of the latter, that the former had made other and conflicting assignments of the same debts, is bad for multifariousness and uncertainty. Porter v. Young, 85 Va. 49, 6 S. E. Rep. 803.
But it is not multifarious for a bill to seek to §ubject a judgment debtor’s interest in lands, chattels, etc., to the payment of plaintiff’s debt. Thomas v. Sellman, 87 Va. 683, 13 S. E. Rep. 146. For illustrations, see cases throughout this note.
3. AS TO PARTIES.--In Carey v. Coffee Stemming Mach. Co., 1 Va. Dec. 863, 20 S. E. Rep. 778, it is held that a bill by a number of stockholders against a *117 corporation, alleging fraud in obtaining subscriptions, etc., is not multifarious because each complaint sets forth a different claim. See Hutchison y. Mershon, 89 Va. 624, 16 S. E. Rep. 874; Rader V. Bristol Land Co., 94 Va. 766, 27 S. E. Rep. 590.
III. TERMINOLOGY.
The word “multifariousness” is more generally applied to chancery proceedings, although it is sometimes used as applicable to actions at law. Thus, in Va. N. So M. Ins. Co. v. Saunders, 86 Va. 969. 11 S. E. Rep. 794, the term is used in an action at law in discussing the rule against duplicity.
The word most applicable to actions at law is “misjoinder,” though this word is also used to designate an error of form in equitable proceedings. Thus, the court in Brown v. Buckner, 86 Va. 615, 10 S. E. Rep. 882, in the course of its opinion remarks, that, “Although the books speak generally of demurrers for multifariousness, such demurrers may be divided into two kinds. (1) The objection raised to a bill, which though termed ‘multifariousness, ’ is, in fact, properly speaking, a misjoinder of causes of suit; that is to say. the cases or claims asserted in the bill are of so different a character that the court will not permit them to be litigated in one record. Story, Eq. PI. sec. 271, 284. It may be that the plaintiffs and the defendants are parties to the whole transactions which form the subject of the suit, but nevertheless those transactions may be so dissimilar that the court will not permit them to be joined together, but will require distinct records. (2) But what is more familiarly understood by ‘multifariousness,’ as applied to a bill, is where a party is brought as a defendant upon a record, with a large portion of which, and of the case made by which, he has no connection whatsoever. * * * And the objection for misjoinder does not apply when all the parties plaintiff have an interest in the suit, although it is not a coextensive interest.”
IV. REASON FOR RULE.
Convenience—Expense.—Generally, it is held that the reason for the rule which governs a court in sustaining or overruling a demurrer, which sets out multifariousness as an objection, is the question of convenience to all parties concerned.
In Alexander v. Alexander, 85 Va. 353, 7 S. E. Rep. 335. the court says: “The cases upon the subject are extremely various, and the court in deciding them, seems to have considered what was convenient under the particular circumstances, rather than to have laid down any absolute rule.” After setting forth some of the cardinal rules for testing whether in a particular case multifariousness exists. it seems that the reason assigned why in a given instance it would be multifarious, is, that it would render the proceedings oppressive because it would tend to load each defendant with an unnecessary burden of costs; thus, giving an additional reason for objection to the fault.
Discussing the question in County School Board y. Parish, 92 Va. 156, 28 S. E. Rep. 221, it was held that a bill would not be declared multifarious if it proposed to accomplish the end in veiw in a manner and by a proceeding convenient to all concerned, unless the course so pursued was so injurious to one or more of the parties as to render it inequitable to accomplish the general convenience in that manner. See Staude v. Keck. 92 'Va. 544, 24 S. E. Rep. 227; Dillard v. Dillard, 97 Va. 434, 34 S. E. Rep. 60.
V. APPLIES TO WHAT PLEADINGS.
Bill—Answer—PIea."The fault of multifariousness may exist either in the bill, answer or plea, ft the plea contains distinct points it will be bad. Thus, a plea is bad for multifariousness that sets up the statute of limitations, and also alleges that the plaintiff who sued as the personal representative of a decedent was not such representative. See Barrett v. McAllister, 35 W. Va. 103, 12 S. E. Rep. 1106; Miller v. Miller, 92 Va. 196, 23 S. E. Rep. 232; Porter v. Young, 85 Va. 49, 6 S. E. Rep. 803. As to the bill, see cases cited throughout the note.
VI. MULTIFARIOUSNESS AS DETERMINED BY PRAYER FOR RELIEF.
1. IN GENERAL.—H is said by the court in Washington, etc., Bk. y. Thornton, 83 Va. 157, 2 S. E. Rep. 193, that “whether or not a bill is multifarious depends, it is said, upon its allegations, and not upon its prayer.” See Nunnally v. Strauss, 94 Va. 255, 26 S. E. Rep. 580.
% ALTERNATIVE PRAYER—A bill is not necessarily bad by reason of raultifariousness because it contains an alternative prayer for relief. But in order, to avoid the fault they should, in general, be consistent. Still a bill in chancery is not multifarious, and therefore demurrable, simply because it contains a prayer for alternate relief, inconsistent with its prayer for specific relief. Korne v. Korne, 30 W. Va. 1, 3 S. E. Rep. 17. See Garrison v. Hall, 75 Va. 150; Carskadon v. Minke, 26 W. Va. 729.
And where the principal object of the bill is to have the profits of a lease collected and applied to pay certain decrees against complainant and insolvent defendant, a prayer that accounts be taken to ascertain the right of the parties under the lease, and the profits applied to pay the decrees and the balance according to the rights of the parties, does not make the bill multifarious, but the decree creditors should be made parties. Yates v. Law, 86 Va. 117, 9 S. E. Rep. 508.
Also, it is permissible for a bill to be framed in a double aspect, but the alternative case stated must be the foundation for precisely the same relief. Thus, stockholders who come into a court oí equity and seek to have their contracts oí subscription rescinded on the ground that they were fraudulently obtained, cannot in the same bill complain of the malfeasance and misfeasance of the corporate directors in the management of the corporate property, and seek relief which rests upon their relation as stockholders of the defendant company. Such relief must be considered a distinct act of affirmance and ratification of the very transaction which they, in another part of their bill, sought to repudiate. Brown v. Bedford City L. So T. Co., 91 Va. 31, 20 S. E. Rep. 968.
3. IMPOSSIBLE OR IMPROPER RELIEN ASKED. —Moreover, a bill is not rendered multifarious because it contains averments and prays relief respecting them which could not in any event be granted.
Thus, in Snavely v. Harkrader, 29 Gratt. 112, infants by their next friend filed their bill against their guardian, first to surcharge and falsify the settled account of their guardian, and to have him removed; and second, to have a sale of their lands. The guardian demurred to the bill on the ground that it was multifarious. It was held that as the court could not sell the infants’land on a bill filed by them, and no relief on that part of the bill could *118 be given, tbe court would consider tbe case as if tbat part of tbe bill was not in it; and tbe demurrer was properly overruled.
VII. AT WHAT STAGE OBJECTION RAISED.
In Answer.—In Virginia tbe demurrer may be embodied in tbe answer. Dunn v. Dunn, 26 Gratt. 291.
On notion to Dissolve Injunction.—But if a bill, which is in part a bill of injunction, be multifarious, tbat objection- cannot be made on a motion to dissolve the injunction. It must be made at tbe final hearing. Shirley v. Long, 6 Rand. 764; Beall v. Shaull, 18 W. Va. 258.
VIII. METHOD OF RAISING OBJECTION.
Demurrer.—In Virginia and West Virginia tbe objection tbat pleadings in chancery are multifarious is usually raised by demurrer. Dnnn-v. Dunn, 26 Gratt. 291; Wells v. Sewell’s, etc., Co., 89 Va. 708,17 S. E. Rep. 2.
And a demurrer in tbe form prescribed by tbe statute, and assigning no grounds, inserted in tbe answer, is sufficient. Dunn v. Dunn, 26 Gratt. 291; Matthews v. Jenkins, 80 Va. 468: Cook v. Dorsey, 38 W. Va. 196,18 S. E. Rep. 468.
And tbe demurrer may not only be general but, as stated above, may be embodied in tbe answer. Dunn v. Dunn, 26 Gratt. 291.
IX. BY WHOM RAISED.
Party Prejudiced or Court Sua Sponte.—It is well settled, tbat tbe defence of multifariousness may be made by demurrer by tbe party prejudiced, or by tbe court at tbe bearing sua sponte. But where a defendant is liable for each one of tbe amounts decreed in a suit, he cannot object on tbe ground of mnltifariousness.' Wells v. Sewell’s, etc., Co., 89 Va. 711,17 S. E. Rep. 2; Dunn v. Dunn, 26 Gratt. 291.
X. WAIVER.
Though a bill be multifarious, and but vaguely state tbe matter on which relief is sought, consent by tbe parties, to an interlocutory decree tbat tbe cause be referred to a commissioner, to audit, state and settle an account of the amount due each of tbe plaintiffs, is a waiver of any objection to such irregularity; and a demurrer thereafter, for such cause, should be disallowed. Rlttenhouse v. Harman, 7 W. Va. 380. ’
XI. EFFECT AND REMEDY.
1. IN GENERAL.—It is difficult to apply tbe rule against multifariousness in practice. Tbe instances are numerous and inharmonious. A suit is not thrown out of court for this fault except in a plain case. Oney v. Ferguson, 41 W. Va. 568, 23 S. E. Rep. 710. An amendment may be allowed. See Shaffer v. Fetty, 30 W. Va. 248, 4 S. E. Rep. 278.
2. AMENDMENT. — But in West Virginia an amendment is not allowed as a matter of course. Shaffer v. Fetty, 30 W. Va. 248, 4 S. E. Rep. 278.
3. DISMISSAL.—When there is a dismissal it should as a rule, be without prejudice. Shaffer v. Fetty, 30 W. Va. 248.4 S. E. Rep. 278.